Argued December 1; reversed December 30, 1943

# WHITING *v.* ANDRUS

(144 P. (2d) 501)

Before Bailey, Chief Justice, and Belt, Rossman, Kelly, Lusk, Brand and Hay, Associate Justices.

*K. C. Tanner,* of Portland, for appellant.

*Robert T. Mautz,* of Portland (Wilbur, Beckett, Howell & Oppenheimer, of Portland, on the brief) for respondent.

HAY, J.  On a summer afternoon, in dry, clear weather, the plaintiff was riding as a guest in an automobile driven by her husband's stepfather, Robt. T. Merrill, on the highway between Florence and Eugene, Oregon.  The paved portion of the highway was sixteen feet wide, and was divided down the center by a yellow line.  The party was returning from a pleasure trip to the coast, and the car was being driven in an easterly direction.  About four and a half miles west of Triangle Lake, as the car was proceeding along the outer side of a curve to the left, it approached a place where another car, facing westerly, was parked upon the highway, in such position that it completely blocked the half of the pavement north of the center stripe.  As the Merrill car drew near to this parked car, a car driven by W. E. Purdy, described as a panel truck, came around the curve from the rear of the parked car and came to a stop behind that car.  The driver of this car testified that he drove around the curve at a speed of from thirty to thirty-five miles an hour.  He first saw the parked car when he was about 175 feet from the place where he brought his car to a stop.  He thereupon applied his brakes and slowed up, with the intention of turning out and going around the parked car, but at that moment he saw the Merrill car approaching from the other direction, and immediately applied his brakes fully and brought his car to a complete stop.

At about the same time, Andrus, the defendant-respondent, approached from the east, driving his own car.  As he came around the curve, he saw the Purdy panel truck and at once applied his brakes.  He did

not, however, come to a stop behind the Purdy truck, but swung over to the left and drove a foot or two over the center line of the highway into the opposite lane of traffic, where his car immediately collided with the Merrill car, which, in the meantime, had approached the scene and had driven past the parked cars.

It was the theory of the plaintiff that the accident was brought about by the joint negligence of Coldren (the driver of the first parked car), Purdy and Andrus, and, accordingly, she brought an action against all of them. In due course, however, she made settlements with Coldren and Purdy and agreed, for a consideration, that she would not pursue the action against them. She did, however, continue it against Andrus.

By an amended complaint, she charged Mr. Andrus with negligence proximately causing the accident, in failing to keep a proper lookout, in failing to have his car under proper control, in driving to the left side of the highway and into the pathway of the Merrill car, and in other particulars. The defendant, denying negligence on his part, alleged that the accident was brought about by the negligence of the driver of the Merrill car, in driving at an excessive speed, in failing to keep a proper lookout, in failing to have his car under control, and in other respects. The defendant also charged that plaintiff was guilty of contributory negligence, in that she knew or should have known of the negligence of the driver of the car in which she was riding, in time to have protested and remonstrated with him, and thus have avoided the accident, but instead "sat supinely by", said nothing, and thus acquiesced in such negligence.

Trial of the action before the court and a jury resulted in a verdict for the defendant, and the plaintiff

appealed. She assigns error upon the giving of certain instructions.

The court submitted the question of plaintiff's contributory negligence to the jury. Plaintiff duly excepted on the ground that the evidence failed to show that she was guilty of contributory negligence in any respect. The only testimony which was given with reference to plaintiff's conduct at the time of the accident was her own. She testified that she had no particular recollection of anything which happened immediately before the collision. On cross-examination, she said she had been living at Triangle Lake for about a month, and was familiar with the curve in the highway where the accident took place; in fact, to use her own expression, she "knew all the curves in the road". She was riding in the back seat of the car and Mr. and Mrs. Merrill were in the front seat. She herself knew how to drive and had driven a car. She did not know at what speed the car was being driven, as she was not paying any attention to that. She was simply enjoying the trip. She knew, however, that it was not going fast. Prior to the accident, she had not observed any of the other vehicles which were involved. She admitted that she might have been day-dreaming.

While the collision took place upon a narrow and winding highway, it does not appear that the exact location of the accident involved features of unusual danger. The contrary is indicated by certain exhibits which are in evidence, including photographs, and a diagram which delineates graphically the highway in the immediate vicinity, including the curve to which reference has been made. Moreover, it is perhaps significant that no "curve" signs, such as are installed by the highway department at dangerous curves, had been

installed at the curve in question. Save for the presence of the parked automobile on the north half of the highway, (of which plaintiff was unaware), there was nothing about the situation which required that plaintiff, in the exercise of due care for her own safety, should have interfered with or cautioned the driver. She had, of course, a duty to use ordinary care to guard herself against injury from the hazards of the road and of the travel. 4 Blashfield, Cyclopedia of Automobile Law and Practice, section 2391; *Johnson v. Underwood,* 102 Or. 680, 203 P. 879; *White v. Portland Gas & Coke Co.,* 84 Or. 643, 165 P. 1005. The question of whether or not a guest passenger has exercised due care for his own safety is usually one to be determined by the jury. *Layman v. Heard,* 156 Or. 94, 66 P. (2d) 492; *Koski v. Anderson,* 157 Or. 349, 71 P. (2d) 1009; *Ramsdell v. Frederick,* 132 Or. 161, 285 P. 219. As a general rule, however, "save in exceptional situations, a guest or passenger in a vehicle is not required to keep a constant lookout or to see to it that he shall be in a condition to do so". Restatement, Torts, section 495. He need not keep a watch on the road, or do "back-seat driving". *Lawrence v. Troy,* 133 Or. 196, 289 P. 491; *Rogers v. Portland Ry., Light & Power Co.,* 66 Or. 244, 134 P. 9. There being nothing in the circumstances which served to warn her to be on the *qui vive,* even the fact that she was day-dreaming was not evidence of negligence on her part. *Sternberg Dredging Co. v. Screws,* 175 Miss. 383, 166 So. 754; *Binford v. Purcell,* 2 Cal. App. (2d) 87, 37 P. (2d) 732. There was no evidence that the driver of the car was incompetent, or that he was not driving in a careful or proper manner. Under those circumstances, the facts that the plaintiff was relaxed, was giving herself up to the enjoyment of

the trip, and was even day-dreaming, are no evidence whatever that she was guilty of contributory negligence. *Martinelli v. Poley,* 210 Cal. 450, 292 P. 451.

"It is a rule of law that the driver of an automobile or other vehicle who fails to look or listen for trains when about to cross a railroad, is guilty of contributory negligence, in default, at least, of special circumstances excusing the omission. I find no fault with that rule. It is reasonable and just. But the courts have in some jurisdictions gone farther. They have held that the same duty that rests upon the driver, rests also upon the passenger. (cas. cit.) The friend whom I invite to ride with me in my car, and who occupies the rear seat beside me, while the car is in the care of my chauffeur, is charged with active vigilance to watch for tracks and trains, and is without a remedy if in the exuberance of jest or anecdote or reminiscence, he relies upon the vigilance of the driver to carry him in safety. I find it hard to imagine a rule more completely unrelated to the realities of life. Men situated as the guest in the case I have supposed, do not act in the way that this rule expects and requires them to act. In the first place, they would in almost every case make the situation worse, if they did; they would add bewilderment and confusion by contributing multitude of counsel. In the second place, they rightly feel that, except in rare emergencies of danger known to them, but unknown to the driver, it is not their business to do anything. The law in charging them with such a duty has shaped its rules in disregard of. the common standards of conduct, the every-day beliefs and practices, of the average man and woman whose behavior it assumes to regulate. We must take a fresh start. We must erect a standard of conduct that realists can accept as just. * * *" Cardozo: A Ministry of Justice, 35 Harv. L. Rev., 113, 120.

■■ Even if Mrs. Whiting had known of the hazard which was created by the presence of the parked cars

upon the highway, the evidence is that the driver of the car was also aware thereof. She was under no duty to inform him of something which he already knew. *Gilman v. Olson,* 125 Or. 1, 265 P. 439; *McCrate v. Morgan Packing Co.,* (C. C. A. 6) 117 F. (2d) 702. However, until the collision actually took place, she knew nothing of the imminence of the danger. She was not required to look out for possible dangers, and had not undertaken to do so. She had intrusted her safety to the driver of the car, and there is no evidence whatever to indicate that she was negligent in doing so. *Rogers v. Portland Ry., Light & Power Co.,* supra; *Goldberg v. Cook,* 206 Minn. 450, 289 N. W. 512; *Dansky v. Kotimaki,* 125 Me. 72, 130 A. 871; *Johnson v. National Casualty Co.,* (La.) 176 So. 235; *Klauber v. Jackson,* 124 Misc. Rep. 738, 209 N. Y. S. 209.

■ Of course, if a guest passenger is aware that the driver of the car "is carelessly rushing into danger", ordinary care for his own safety may require that he should take appropriate measures to protect himself. *Layman v. Heard,* supra; *Koski v. Anderson,* supra. In this case, however, the plaintiff's driver was driving carefully on his own side of the highway, which side was clear of traffic, was proceeding at a reasonable rate of speed, (twenty or thirty miles an hour, according to a witness for defendant), and there was nothing in the circumstances which required the plaintiff to intervene. Even the fact that the driver did not sound his horn before attempting to pass the parked cars, if that was negligence on his part, cannot be imputed to Mrs. Whiting, as she was not aware of the situation. It seems to us that the submission of the question of plaintiff's alleged contributory negligence

to the jury was an invitation to speculation and guess-work.

The collision caused the defendant's car to bounce backward "eight or ten or twelve feet", and the defendant contends that the jury might have deduced from that fact that the Merrill car was being driven at an excessive rate of speed. Where excessive speed may reasonably be inferred from the facts and circumstances, direct evidence thereof is not required. *Green-slitt v. Three Bros. Baking Co.*, 170 Or. 345, 133 P. (2d) 597. Mr. Merrill's car was a Studebaker sedan, while the defendant's was a Ford coupe, and we do not believe that the mere fact that the lighter car bounced backward would justify a jury in finding that the heavier car was being driven at an excessive rate of speed. None of the persons who saw the Merrill car approaching the scene of the accident testified to any facts which would indicate excessive speed, or that there was anything about Merrill's driving which would indicate reck-lessness or negligence.

On the oral argument, counsel for respondent sought to impute negligence to plaintiff based upon the fact that she intrusted the safety of her person to a driver who was "an elderly man". Elucidating his meaning, he said that Mr. Merrill was "over sixty". Threescore years may, indeed, seem ancient to counsel, but he can hardly expect the members of this court to be entirely in sympathy with that point of view! In the absence of evidence to the contrary, the competency of a person "over sixty" to drive an automobile is attested, both by the law which grants him a driver's license and, we think, by the facts of life. In any event, the pleadings did not charge plaintiff with negligence in this respect.

Error is assigned further upon the fact that the trial judge instructed the jury with respect to the state

law defining what are deemed to be adequate brakes upon a motor vehicle. As the adequacy of defendant's brakes was not in issue, we think that the instruction should not have been given. However, in our opinion, the giving of this instruction, in itself, under the circumstances, would not have been sufficient to warrant reversal of the case.

The submission to the jury of plaintiff's alleged contributory negligence, however, in the absence of evidence thereof, was reversible error. The judgment is reversed, and the cause remanded for a new trial.

BELT, J., dissents.

I agree that the instruction relative to contributory negligence should not have been given, as there was no substantial evidence upon which to base it. However, the giving of an abstract instruction—although disapproved—will not warrant a reversal unless it can be said that the interests of the party complaining of error were substantially injured thereby: Blashfield's Cyc. of Automobile Law, § 6666.5; 64 C. J. § 646, p. 738. In the instant case the jurors were not misled by such instruction. As reasonable-minded persons they knew that there was nothing that the plaintiff did or failed to do that had anything whatever to do with causing the collision. In my opinion, the alleged contributory negligence of the plaintiff was not taken into consideration by the jury in reaching its verdict.

I, therefore, dissent.

LUSK, J., concurs in this dissent.